# ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 9th Floor
Beverly Hills, CA 90212-2974
kscott@ecjlaw.com
PH: 310.281.6348
File No. 11466-2

August 24, 2011

**VIA FACSIMILE (310)271-6963
AND FIRST CLASS MAIL**

Dennis Ardi, Attorney at Law
A Professional Corporation
340 North Camden Drive, Third Floor
Beverly Hills, CA 90210

> Re:   **Improv West Associates August 22, 2011 Demand to Gotham
> Comedy Club**

Dear Mr. Ardi:

As you are aware, this firm represents Comedy Club, Inc. / Al Copeland Investments,
Inc. (collectively "CCI"). I have been forwarded a copy of your most recent
correspondence dated August 22, 2011, and addressed to Christopher Mazzilli of
Gotham Comedy Club, and I write in response thereto. Much like your letter
correspondence dated April 28, 2011, addressed to my partner, Ken Luer, Esq., your
August 22, 2011 correspondence ignores the terms of our respective clients' June 13,
1999 Trademark License Agreement ("Trademark License Agreement"), the October
19, 1999 Amendment thereto ("Trademark Amendment"), and, most recently, the
parties' January 6, 2010 Settlement Agreement ("Settlement Agreement"), and purports
to dictate to a third party what content can and cannot be displayed on the Improv.com
website (the "Website"). As I previously expressed to you in my May 5, 2011, response
to your April 28 letter, and as reiterated herein, CCI has at all times operated the
Website in accordance with the parties' respective contractual agreements, and Improv
West Associates' ("IWA") demand to remove content from the Website—whether made
to CCI or to Gotham Comedy Club—is hereby rejected.

There is little question that the Trademark License Agreement creates a broad grant of
rights in the trademarks "Improv" and "Improvisation" to CCI. To wit, the Recitals to the
Trademark License Agreement provide as follows:

11466.2:1262534.1

EXHIBIT _G_ PAGE _69_

ERVIN COHEN & JESSUP LLP

Dennis Ardi, Attorney at Law
August 24, 2011
Page 2

WHEREAS, [IWA] wishes to grant to [CCI] and [CCI] wishes to acquire an **exclusive license to use the trademarks "IMPROV" and "IMPROVISATION" (the 'Trademarks') in connection with the business that [CCI] plans to operate at the premises now used by the Melrose Improv; and . . . in connection with other restaurant/bar/nightclub facilities** that [IWA] may own or open at other locations and the right to grant to third parties a sub-license to use the Trademarks in connection with other restaurant/bar/nightclub facilities that such third parties may own or open at other locations . . ..(Emphasis added)

The language of the Trademark License Agreement is unmistakably broad enough to confer to CCI the right to use the trademark "Improv" or "Improvisation" in any manner, provided, of course, that the use thereof "is in connection with" the operation of the underlying business. The grant would therefore include the use of a website for ticket sales, promotional purposes and any and all merchandise that is related thereto, as is common in the restaurant and entertainment industries. The conduct of which you previously complained in your April 28 letter, and which you again raise in your August 22 letter to Gotham Comedy Club, is in connection with CCI's continued operation of the business, including the broad grant of the use of the "Improv" trademark.

IWA's demand that any reference to Gotham Comedy Club be removed from the Website is equally unavailing in light of the language of the Trademark Amendment and the parties' conduct relating thereto. CCI's **"exclusive license"** to use the trademarks as set forth in the Trademark License Agreement was further confirmed and expanded upon in the Trademark License Amendment. The Trademark License Amendment provides, in pertinent part:

LICENSOR will grant to LICENSEE the **exclusive rights and license to use, utilize, and/or license the trademarks, trade dress and content associated therewith for the purpose of the use on the Internet,** including broadband or other Internet related media, and radio as deemed appropriate by LICENSEE. Ownership in the marks will remain vested in LICENSOR **who agrees not to enter into any other usage without prior approval from Comedy Club, Inc.** whose consent will not be unreasonably withheld provided any such use by LICENSOR shall not impair the rights of LICENSEE . . .. Budd Freedman and Improv West will provide their best efforts to resolve and assist Comedy Club, Inc. to **obtain the rights to improv.com."** (Emphasis added)

Through these provisions, CCI effectively relinquished complete control and ownership of the Website for the duration of the Trademark License Agreement. In fact, IWA has never provided any content for the Website nor has it exercise any influence or control

11466.2:1261776.2

**ERVIN COHEN & JESSUP**LLP

Dennis Ardi, Attorney at Law
August 24, 2011
Page 3

over the contents of the Website. CCI is entitled to operate the Website in any manner that it deems fit, again assuming that any activity on the Website is "in connection with" the operation of the underlying business, which it is. Thus, CCI's election to grant permission to Gotham Comedy Club to sell tickets on the website is within CCI's prerogative under both the Trademark License Agreement and the Trademark Amendment thereto.

Similarly, IWA's stated position that Gotham Comedy Club is somehow infringing upon IWA's trademark is also directly belied by Paragraph 3 of the Settlement Agreement. The parties' January, 2010 Settlement Agreement addressed all outstanding disputes between the parties, including the threatened action regarding the Website that was raised by you prior to that time. To this end, Paragraph 3 of the Settlement Agreement provides, "[u]nless and until otherwise agreed in writing or resolved by proceedings undertaken pursuant to the License Agreement, the Parties **shall observe the status quo existing as December 21, 2009** with respect to the Internet domain name "Improv.com" and with respect to the use of the marks 'Improv' and 'Improvisation' on the Internet." (Emphasis added).

Thus, pursuant to the Settlement Agreement, both specific content (*i.e.*, verbatim language) as well as any specified types of content (*i.e.,* links for ticket sales and reference to Gotham Comedy Club) that existed on the Website or before December 21, 2009 are part of the "status quo" and are properly displayed on the Website. As we outlined in response to your April 22 letter, we have investigated the manner in which the Website was maintained and the content that existed pre-December 21, 2009, as compared to the content as it exists today. Rest assured that no substantive changes to the "status quo" have been made. In fact, while the content is obviously updated, the Website has operated in much the same fashion as it has since its inception. In light of such, we view IWA's current complaints regarding the Website's operation and the demands made of CCI, and most recently of Gotham Comedy Club, as factually and legally baseless.

Put simply, IWA's most recent attempts to hijack the Website are as unavailing now as they were when prior demands were made back in August, 2003, June, 2008 and May, 2011. We find it troubling that much of your correspondence on these subjects arrives at times when our respective clients are discussing business solutions to the various issues, effectively chilling such discussions and fostering an atmosphere of distrust. Nevertheless, CCI will continue to operate the Website in accordance with the parties'

11466.2:1261776.2

EXHIBIT 6 PAGE 71

ERVIN COHEN & JESSUP LLP

Dennis Ardi, Attorney at Law
August 24, 2011
Page 4

contractual obligations, which includes reference on the Website to, and ticket sales
from, Gotham Comedy Club.  In the future, should you have any questions or concerns
about CCI's course of conduct related to the Website, please send them to me directly.

Very truly yours,

Kelly O. Scott
ERVIN COHEN & JESSUP LLP

KOS:LJK

cc:     Kenneth A. Luer, Esq.
        Lauren J. Katunich, Esq.

11466.2:1262534.1

EXHIBIT G PAGE 72

**ERVIN COHEN & JESSUP** LLP

Dennis Ardi, Attorney at Law
August 24, 2011
Page 5

    bcc:   Bryan White
             Ronald Wendel

11466.2:1262534.1

# ERVIN COHEN & JESSUP LLP

9401 Wilshire Boulevard, 9th Floor
Beverly Hills, CA 90212-2974
kscott@ecjlaw.com
PH: 310.281.6348
File No. 11466-2

August 24, 2011

**VIA FACSIMILE (310)271-6963**
**AND FIRST CLASS MAIL**

Dennis Ardi, Attorney at Law
A Professional Corporation
340 North Camden Drive, Third Floor
Beverly Hills, CA  90210

Re:   **Comedy Club, Inc. and Al Copeland Investments, Inc. v. Improv West**
      **Associates**

Dear Dennis:

As you know, this firm represents Comedy Club, Inc. / Al Copeland Investments, Inc.
(collectively "CCI").  I am writing to you in connection with a letter dated August 5, 2011,
addressed generically to certain unspecified "Improv Club Owners" from PixoFactor
Entertainment ("PixoFactor").  The August 5 letter indicates that Pixofactor has
"partnered with Budd and Mark and Improv to build and expand the Improv brand
across all digital platforms".  The letter goes on to describe, in very general terms, plans
for the future of the Improv on the Internet.  In addition, through a press release dated
August 3, 2011, PixoFactor announced to the world that it has partnered with Budd
Friedman and Mark Lonow build a new Improv website and engage in various Internet
activities using in the Improv name.  It is clear that PixoFactor is under the mistaken
impression that Budd Friedman and Mark Lonow are authorized to engage or otherwise
"partner" with PixoFactor to "build and expand the Improv brand across all the digital
platforms."  Unfortunately, to the extent that such authorization has been communicated
to PixoFactor, whether by Improv West Associates ("IWA") or its principals, PixoFactor
has been woefully misled.

The announcements from PixoFactor are merely the most recent efforts made on behalf
of IWA to gain control of the Improv brand on the Internet, and in particular, the
"Improv.com" website (the "Website").  As you will recall, the issue of CCI's continued
operation of the Website first was raised by you by email dated June 30, 2008.  At that

11466.2:1262537.1

EXHIBIT 6 PAGE 74

ERVIN COHEN & JESSUP LLP

Dennis Ardi, Attorney at Law
August 24, 2011
Page 2

time, IWA threatened to commence an action to prevent CCI's so-called "unauthorized"
use of the Website. Your email contained a bold proclamation that, unless CCI
discontinued use of the Website, IWA would commence legal action and an award in
IWA's favor would "be essentially pro forma." My responsive letter to you, dated August
14, 2008, made it clear that IWA's claims were baseless.

Nearly three years later, on April 28, 2011, IWA again made an effort to wrongfully gain
control of the Website with the accusation that CCI's continued operation of the Website
was in violation of the parties' Trademark License Agreement and the Trademark
License Amendment thereto. I responded to these unfounded allegations in my letter to
you dated May 5, 2011—which was similar to the response I provided you on August
14, 2008 in reply to your June 30, 2008 email—wherein I explained that CCI would not
cease operating the Website with its current content, nor would it supply the detailed
information you sought in your April 28, 2011 demand letter.

Fast forward approximately three months to early August, 2011. Clearly realizing that
IWA has no lawful basis under which to claim control of the Website, IWA, by and
through Budd Friedman and Mark Lonow, now seeks to circumvent the parties'
Trademark License Agreement and Trademark License Amendment altogether by
creating new Internet content for the Improv in a partnership with PixoFactor. This will
not stand.

As you are aware, the Trademark License Agreement creates a broad grant of rights in
the trademarks "Improv" and "Improvisation" to CCI. To wit, the Recitals to the
Trademark License Agreement provide as follows:

> WHEREAS, [IWA] wishes to grant to [CCI] and [CCI] wishes to acquire an
> **exclusive license to use the trademarks "IMPROV" and**
> **"IMPROVISATION"** (the 'Trademarks') in connection with the business
> that [CCI] plans to operate at the premises now used by the Melrose
> Improv; and . . . in connection with other restaurant/bar/nightclub facilities
> that [IWA] may own or open at other locations and the right to grant to
> third parties a sub-license to use the Trademarks in connection with other
> restaurant/bar/nightclub facilities that such third parties may own or open
> at other locations . . ..(Emphasis added)

The language of the Trademark License Agreement is thus unmistakably broad and
confers to CCI "an exclusive license" to use the trademark "Improv" or "Improvisation"
in any manner, provided, of course, that the use thereof "is in connection with" the
operation of the underlying business.

EXHIBIT 6 PAGE 35

ERVIN COHEN & JESSUP LLP

Dennis Ardi, Attorney at Law
August 24, 2011
Page 3

CCI's "exclusive license" to use the trademarks as set forth in the Trademark License Agreement was further confirmed and expanded upon in the Trademark License Amendment. The Trademark License Amendment provides, in pertinent part:

> LICENSOR will grant to LICENSEE the exclusive rights and license to use, utilize, and/or license the trademarks, trade dress and content associated therewith for the purpose of the use on the Internet, including broadband or other Internet related media, and radio as deemed appropriate by LICENSEE. Ownership in the marks will remain vested in LICENSOR who agrees not to enter into any other usage without prior approval from Comedy Club, Inc. whose consent will not be unreasonably withheld provided any such use by LICENSOR shall not impair the rights of LICENSEE . . ..(Emphasis added)

The terms of the Trademark License Amendment remain in full force and effect today. This is particularly true since the parties' January, 2010 Settlement Agreement ("Settlement Agreement"), which addressed all outstanding disputes between the parties, including the threatened action regarding the Website raised in your June, 2008 correspondence, and provides, "[u]nless and until otherwise agreed in writing or resolved by proceedings undertaken pursuant to the License Agreement, the Parties shall observe the status quo existing as December 21, 2009 with respect to the Internet domain name "Improv.com" and with respect to the use of the marks 'Improv' and 'Improvisation' on the Internet." (Emphasis added).

Needless to say, IWA's planned use of the "Improv" trademark on the Internet to create a competing website with rival content is not observing the status quo as it existed in December of 2009 and is in clear violation of the Trademark License Agreement and the Trademark License Amendment. Nor does CCI consent to the use of the "Improv" name on the Internet in this manner. At the risk of stating the obvious, CCI does not and cannot consent to the creation of an all-encompassing Improv website or of any Internet content that would detract from, or compete with, the Website or otherwise potentially cause confusion in the marketplace as to the only source of information concerning the Improv which is authorized to use the "Improv" name .

CCI therefore demands that IWA cease and desist in the development of Internet content and the creation of a website that utilizes the "Improv" or "Improvisation" trademarks in any respect. IWA's failure to comply will necessarily result in the commencement of litigation, wherein CCI will seek all available remedies, including damages, injunctive relief, attorneys' fees and costs, all of which rights and remedies are hereby specifically reserved.

11466.2:1262537.5

ERVIN COHEN & JESSUP LLP

Dennis Ardi, Attorney at Law
August 24, 2011
Page 4

I trust that IWA will govern itself accordingly.

Very truly yours,

Kelly O. Scott
ERVIN COHEN & JESSUP LLP

KOS:LJK

cc:    Kenneth A. Luer, Esq.
       Lauren J. Katunich, Esq.

11466.2:1262537.5

EXHIBIT  G  PAGE  77

Dennis Ardi, Attorney at Law
August 24, 2011
Page 5

    bcc:   Bryan White
            Ronald Wendel

11468.2:1262537.5

EXHIBIT G PAGE 78

# ERVIN COHEN & JESSUP LLP

9401 Wilshire Blvd., 9th Floor
Beverly Hills, CA 90212-2974
kscott@ecjlaw.com
PH: 310.281.6348
FX: 310.887.6848
File 11466.2

August 24, 2011

**VIA FEDERAL EXPRESS**

Sean Hurwitz
Chief Executive Officer
PixoFactor Entertainment
209 West 6th
Royal Oak, MI 48067

Re:   Partnership with Improv West Associates for Planned Exploitation of "Improv"
        Trademark on the Internet

Dear Mr. Hurwitz:

This firm represents Comedy Club, Inc. / Al Copeland Investments, Inc. (collectively "CCI"), and I write in response to your letter dated August 5, 2011 addressed generically to certain unspecified "Improv Club Owners." As you know, your August 5 letter enthusiastically describes in very general terms various plans for the future of the Improv on the Internet. These plans are repeated to some degree by a press release dated August 3, 2011. Both the letter and press release make clear that PixoFactor Entertainment ("PixoFactor") has partnered with Budd Freidman and Mark Lonow "build and expand the Improv brand across all the digital platforms." PixoFactor is obviously under the impression that Improv West Associates ("IWA"), and more specifically, its principals, Budd Friedman and Mark Lonow, are authorized to engage or otherwise "partner" with PixoFactor in the representation of the Improv brand on the Internet. Unfortunately, to the extent that such authorization has been communicated to you, whether by IWA, its principals, or by anyone else for that matter, PixoFactor has been woefully misled.

So that you are aware, on June 13, 1999, CCI, on the one hand, and IWA, on the other, entered into a Trademark License Agreement ("Trademark License Agreement"). The Trademark License Agreement is unmistakably broad and confers to CCI the *exclusive* license and right to use the trademarks "Improv" or "Improvisation" in any manner that is "in connection with" the operation of CCI's underlying business. Shortly after the parties entered into the Trademark License Agreement, an amendment thereto was entered into effective as of October 19, 1999 ("Trademark License Amendment"). The Trademark License Amendment further confirms and expands upon the broad grant of rights in the in the Trademark License Agreement and provides, in pertinent part:

11466.2:1262553.1

EXHIBIT G PAGE 79

**ERVIN COHEN & JESSUP** LLP

Sean Hurwitz
August 24, 2011
Page 2

[IWA] will grant to [CCI] the exclusive rights and license to use, utilize, and/or license the trademarks, trade dress and content associated therewith for the purpose of the use on the Internet, including broadband or other Internet related media, and radio as deemed appropriate by [CCI].  Ownership in the marks will remain vested in [IWA] who agrees not to enter into any other usage without prior approval from Comedy Club, Inc. whose consent will not be unreasonably withheld provided any such use by [IWA]shall not impair the rights of [CCI]. . ..(Emphasis added)

Needless to say, it is CCI, not IWA, that currently maintains the exclusive right to control the exploitation of the "Improv" and "Improvisation" trademarks on the Internet.  Based on the statements contained within your August 5 letter and August 3 press release, it appears that the newly formed partnership between Budd Friedman and Mark Lonow (presumably on behalf of IWA) and PixoFactor, and more specifically, PixoFactor's planned creation of an "Improv Network," is in direct competition with CCI's current and anticipated future use of the Improv.com website.  Given the circumstances of the planned use, we cannot grant IWA and/or PixoFactor permission to use the "Improv" trademark in such a fashion.

To the extent that CCI has somehow misunderstood your intentions for the future of the Improv on the Internet, please do not hesitate to contact me to discuss the matter further.  Otherwise, you may wish to confer directly with IWA about the future of your planned endeavors.  Regardless, please be advised that now that PixoFactor has been put on notice of CCI's rights (all of which rights and remedies are hereby specifically reserved), any participation by PixoFactor in IWA's planned violation of those rights will necessarily implicate PixoFactor should litigation ultimately ensue.

Very truly yours,

Kelly O. Scott
ERVIN COHEN & JESSUP LLP

KOS:LJK

cc:     Dennis Ardi, Esq.
        Kenneth A. Luer, Esq.
        Lauren J. Katunich, Esq.

11466.2:1262553.1

EXHIBIT G PAGE 80

**ERVIN COHEN & JESSUP** LLP

Sean Hurwitz
August 24, 2011
Page 3

    bcc:   Bryan White
            Ronald Wendel

EXHIBIT G PAGE 81